# JAMES KOUSOUROS
*ATTORNEY AT LAW*

**JAMES KOUSOUROS**
FOUNDER & PRINCIPAL

260 Madison Avenue, 22nd floor • New York, NY 10016
212•532•1934 / 212•532•1939 fax
E-mail: James@kousouroslaw.com

**GABRIEL REYES**
ADMITTED IN NY & TX

**SARAH A. TREPEL**

November 23, 2015

*Sent via first class mail and via email to <u>Jacquelyn.Kasulis@usdoj.gov</u>*
Jacquelyn M. Kasulis
Assistant U.S. Attorney
Deputy Chief, General Crimes
U.S. Attorney's Office – Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

    Re:    USA v. Gregg Mulholland, et al.
             Criminal Docket No. 14-476 (S-1)(ILG)

Dear Ms. Kasulis:

    I write to express my concerns regarding several matters raised by the government's discovery in this case. First, I will address the absence of the MLAT request that the United States made to Belize and through which a substantial amount of discovery has been obtained. Second, I will address the need for a Bill of Particulars to specify the transactions in which the indictment alleges that Mr. Mulholland took part. Third, I am making a specific request for the disclosure of expert reports that substantiate amounts attributable to Gregg Mulholland in this conspiracy. These reports would help me evaluate his alleged role and would assist in making an accurate Guidelines calculations. Fourth, part of the discovery the government has produced is password protected and inaccessible in its current form. Fifth, parts of the government's discovery raises issues of attorney client privilege that requires an assurance that appropriate procedures were used in identifying and producing those documents. Finally, I also ask that the government disclose a list of the email addresses it believes Mr. Mulholland used during the course of the alleged conspiracy.

### MLAT Request

    Naturally, I must acknowledge your response to my most recent query regarding the government's MLAT request. My office emailed you on Friday, November 20, 2015 and asked whether the government could provide the date that the MLAT request was submitted/ transmitted to Belize, the date on which Belize confirmed it would take action and the date on

which Belize did take action. Today, you responded that Belize did not confirm whether or not it would take action on the request. You also stated Belize served the MLAT on the day that Mr. Bandfield was arrested. While I appreciate your prompt attention to this matter, your response still leaves open the issue of when the United States actually made a request for assistance. It also leaves unanswered several details of the MLAT procedure employed by the United States government as well as the United States government's participation in the execution of the request. It is my position that these questions would be best answered by the government's production of that instrument and all communications between our government and Belize that concern its use.

This production is necessary because you have indicated in prior email communications that your office obtained a significant amount of discovery through the MLAT request that it transmitted to the government of Belize. Indeed, the information gained from this request is so voluminous that the government requires the following hardware to produce it:

- 13 4TB HDs for the Belize documents/computers;
- 1 1TB HD for the Bandfield computers; and
- 1 500GB HD for the Mulholland computers.

As 1 TB equals the paper produced from 50,000 trees and 1 GB about 75,000 pages, the discovery gained through this request dwarfs the amount of evidence the government gathered through alternate means.[1] It appears, then, that the government is bound to rely on evidence gained from this fruitful request at trial.

While it appears that the government has authority to gather evidence from abroad, the wording of the treaty raises several issues that might be germane to the use of evidence in US Courts. As an initial matter, it is my understanding that the United States of America and Belize signed a treaty governing their mutual assistance obligations in Belize on September 19, 2000. This treaty (which I assume is the relevant authority under which the US government made its request), then went into force on July 2, 2003. It allows the United States (the Requesting State) to make a request of Belize (the Requested State) for various forms of assistance "in connection with the investigation, prosecution, and prevention of criminal offenses, and in proceedings related to criminal matters." (Article 1.1). Among the requests that can be made is "executing requests for searches and seizures." (Article 1.2(f)). I can only assume that this was part of the request made to Belize.

Certain circumstances exist under which Belize may deny a request. These circumstances include when "the request is not made in conformity with the Treaty...the request is made pursuant to Article 14 [governing search and seizures] or 16 [governing forfeitures]...and relates to conduct which if committed in the Requested State would not be an offense in that

---

[1] Data Volume Estimates and Conversions, sdsdiscovery, available at:
http://www.sdsdiscovery.com/resources/data-conversions/ (Last viewed on November 23, 2015).

State...the execution of the request would be contrary to the Constitution of the Requested State." (Article 3.1(c), (e) and (g)). In these situations, the Requested Party may deny assistance and "inform the Central Authority of the Requesting State of the basis for the denial." (Article 3.3). Obviously, Belize ultimately complied with the MLAT request. But it is highly relevant to Mr. Mulholland's defense and the preparation of our motions to ascertain whether it denied a request for any of the reasons outlined in this letter or upon any other basis allowed under the mutual assistance treaty. Of course, whether the request was granted in conformity with the treaty is also a matter of concern.

It is also important under the treaty that the United States provide a "description of any particular procedure to be followed in executing the request." (Article 4.3(g)). These procedures, when "specified in the request shall be followed except to the extent that those procedures cannot lawfully be followed in the Requested State." (Article 5.3). Given the ability of the United States to exercise a degree of control over the manner in which particular items were gathered in Belize, it is material to Mr. Mulholland's defense and the preparation of our motions to understand which (if any) procedures the United States requested would be followed in gathering the materials that the government now intends to produce as discovery and rely on at trial.

It is also clear that the treaty provides the United States an opportunity for notice and participation in the gathering of evidence. "Upon request, the Central Authority of the Requested State shall furnish information in advance about the date and place of the taking of the testimony or evidence pursuant to this Article." (Article 8.2). It also clear that the Requested State "shall permit the presence of such persons as specified in the request during the execution of the request, and shall allow such persons to question the person giving the testimony or evidence." (Article 8.3). Although you make clear in your response that the United States government did not receive advance notice of the searches, did it avail itself of the opportunity to receive notice and participate in the taking of evidence? Also, did the government participate in the gathering and culling of evidence after the searches were conducted?

Also, the treaty creates an obligation on the Requested State to "use its best efforts to ascertain the location or identity of persons or items *specified in the request*." (Article 12) (emphasis added). Which items or persons did the United States government specifically identify in the MLAT request?

This information is material to the preparation of Mr. Mulholland's defense as well as the preparation of our motions and so I consider its production necessary for the government to meet its Rule 16 obligations.

**Bill of Particulars**

Next week, I anticipate moving the Court for a Bill of Particulars. The need for particulars arises from both the complex nature of the allegations leveled against Mr. Mulholland

and also the voluminous amount of discovery provided, most of which is of a technical nature that cannot easily be separated into relevant and irrelevant parts. For example, the government has provided many bank records. But which of these bank records provide evidence of the transactions with which the United States government takes issue? In paragraphs 22 and 23 of the indictment, the government alleges as follows:

- That Mr. Mulholland worked with others between 2009 and September 2014 to create "numerous shell companies and bank accounts through which passed approximately $500 million in fraudulent proceeds connected to more than 100 U.S. citizens and residents"; and that
- Mr. Mulholland was "responsible for fraudulently manipulating the stock of more than forty U.S. publicly traded companies and then transferring, through attorney escrow accounts associated with five offshore law firms, approximately $300 million in fraudulent proceeds into, inter alia, accounts controlled by the Mulholland Group in the U.S. and Canada."

Superseding Indictment, Dkt. No. 32. Presumably, the government has identified the individuals, bank accounts and law firms that substantiate these allegations. They should be identified within the government's voluminous production so that Mr. Mulholland can better assess the validity of the government's claims.

**Expert Reports and Other Disclosures**

In connection with the previous request, the government has indicated that it would provide the names of experts and the basis for their opinions as they become available. It first made this representation on or about August 10, 2015. *See* Letter to Andrew M. Lankler, Dkt. No. 37. As of today, however, the government has made no such disclosures. At trial, I expect that you would designate at least one FBI analyst as an expert to discuss that agency's review of bank records in this case. Based on the allegations in the indictment, I suspect that the basis for this testimony has been prepared at least in draft form. The analysis on which an analyst will ultimately rely would greatly assist Mr. Mulholland's review of the discovery in this case and would help in counseling him on a proper Guidelines range.

**Password Protected Discovery**

The government's production for November 3, 2015 is password protected. Could you provide this material either in a form that is not password protected or provide my office the relevant passwords for each of the files contained in that production? The general nature of that set of discovery concerns electronic media gathered at the time of my client's arrest.

**Attorney Client Privilege**

On August 20, 2015 you served discovery on the defense in which you outlined that certain documents were provided to the government which may contain attorney-client privileged information. Assistants from your office were designated to cull through the documents after which it appears that they unilaterally determined which documents were privileged and which were not. Those designated non-privileged were then provided to the trial team. As we are relatively new to the case, we are not aware as to whether the defense was ever provided with an opportunity to weigh in on the process of determining which documents were and were not privileged. Please inform us whether this was done. We are reserving the right to conduct our own review of the documents and address the procedures employed in this regard. Additionally, it appears that several of the intercepted communications may also have been privileged. Were these included in the privilege inquiry?

**Defendant's Statements**

Finally, it would also assist my review of the discovery if the government could provide me a list of the email addresses it believes that Mr. Mulholland used to communicate with other individuals during the course of the alleged conspiracy.

I do hope that we can discuss these matters in anticipation of December 2, 2015, which is our pre-trial motions deadline.

Sincerely,

James Kousouros (JK:SR)

c.c.

Clerk of Court (ILG) (by ECF)
Eugene E. Ingoglia, Esq. (Counsel for Robert Bandfield)