**Exhibit I: The MLAT Treaty**

TREATIES AND OTHER INTERNATIONAL ACTS SERIES 13116

---

## JUDICIAL ASSISTANCE

**Treaty Between the**
**UNITED STATES OF AMERICA**
**and BELIZE**

Signed at Belize September 19, 2000

 with

Exchange of Notes



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966
(80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued
under the authority of the Secretary of State shall be competent
 evidence . . . of the treaties, international agreements other than
treaties, and proclamations by the President of such treaties and
international agreements other than treaties, as the case may be,
therein contained, in all the courts of law and equity and of maritime
jurisdiction, and in all the tribunals and public offices of the
United States, and of the several States, without any further proof
or authentication thereof."

# BELIZE

## Judicial Assistance

*Treaty signed at Belize September 19, 2000;*
*Transmitted by the President of the United States of America*
*to the Senate July 15, 2002 (Treaty Doc. 107-13,*
*107th Congress, 2d Session);*
*Reported favorably by the Senate Committee on Foreign Relations*
*October 8, 2002 (Senate Executive Report No. 107-15,*
*107th Congress, 2d Session);*
*Advice and consent to ratification by the Senate*
*November 14, 2002;*
*Ratified by the President January 23, 2003;*
*Ratified by Belize January 8, 2001;*
*Ratifications exchanged at Washington July 2, 2003;*
*Entered into force July 2, 2003.*
*With exchange of notes.*

**TREATY**
**BETWEEN THE GOVERNMENT OF**
**THE UNITED STATES OF AMERICA**
**AND**
**THE GOVERNMENT OF BELIZE**
**ON**
**MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS**

## TABLE OF CONTENTS

| | |
|---|---|
| Article 1 | Scope of Assistance |
| Article 2 | Central Authorities |
| Article 3 | Limitations on Assistance |
| Article 4 | Form and Contents of Requests |
| Article 5 | Execution of Requests |
| Article 6 | Costs |
| Article 7 | Limitations on Use |
| Article 8 | Testimony or Evidence in the Requested State |
| Article 9 | Records of Government Agencies |
| Article 10 | Testimony in the Requesting State |
| Article 11 | Transfer of Persons in Custody |
| Article 12 | Location or Identification of Persons or Items |
| Article 13 | Service of Documents |
| Article 14 | Search and Seizure |
| Article 15 | Return of Items |
| Article 16 | Assistance in Forfeiture Proceedings |
| Article 17 | Compatibility with Other Arrangements |
| Article 18 | Consultation |
| Article 19 | Ratification, Entry Into Force, and Termination |

**FORMS**

| | |
|---|---|
| **Form A** | **Certificate of Authenticity of Business Records** |
| **Form B** | **Attestation of Authenticity of Foreign Public Documents** |
| **Form C** | **Attestation with Respect to Seized Articles** |

The Government of the United States of America and the Government of Belize,

Desiring to improve the effectiveness of the law enforcement authorities of both countries in the investigation, prosecution, and prevention of crime through cooperation and mutual legal assistance in criminal matters,

Have agreed as follows:

2

## Article 1

### Scope of Assistance

1.    The Contracting Parties shall provide mutual assistance, in accordance with the provisions of this Treaty, in connection with the investigation, prosecution, and prevention of criminal offenses, and in proceedings related to criminal matters.

2.    Assistance shall include:

    (a)    taking the testimony or statements of persons;

    (b)    providing documents, records, and articles of evidence;

    (c)    locating or identifying persons;

    (d)    serving documents;

    (e)    transferring persons in custody for testimony or other purposes;

    (f)    executing requests for searches and seizures;

    (g)    assisting in proceedings related to immobilization and forfeiture of assets; restitution; collection of fines; and

    (h)    any other form of assistance not prohibited by the laws of the Requested State.

3.    Except as otherwise provided in this Treaty, assistance shall be provided without regard to whether the conduct which is the subject of the investigation, prosecution, or proceeding in the Requesting State would constitute an offense under the laws of the Requested State.

4.    This Treaty is intended solely for mutual legal assistance between the Contracting Parties.  The provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.

## Article 2

### Central Authorities

1.    Each Contracting Party shall designate a Central Authority to make and receive requests pursuant to this Treaty.

2.    For the United States of America, the Central Authority shall be the Attorney General or a person designated by the Attorney General.  For Belize, the Central Authority shall be the Attorney General or a person designated by the Attorney General.

3.  The Central Authorities shall communicate directly with one another for the purposes of this Treaty.

3

## Article 3

### Limitations on Assistance

1.      The Central Authority of the Requested State may deny assistance if:

   (a)     the request relates to an offense under military law which would not
           be an offense under ordinary criminal law;

   (b)     the execution of the request would prejudice the security or other
           essential public interests of the Requested State;

   (c)     the request is not made in conformity with the Treaty;

   (d)     the request relates to a political offense;

   (e)     the request is made pursuant to Article 14 or 16 of this Treaty and
           relates to conduct which if committed in the Requested State would
           not be an offense in that State;

   (f)     the execution of the request requires compulsory measures in the
           Requested State and the request does not establish that there are
           reasonable grounds for believing that the criminal offense
           specified in the request has been committed; or

   (g)     the execution of the request would be contrary to the Constitution of
           the Requested State.

2.      Before denying assistance pursuant to this Article, the Central Authority of
the Requested State shall consult with the Central Authority of the Requesting State to
consider whether assistance can be given subject to such conditions as it deems necessary.
If the Requesting State accepts assistance subject to these conditions, it shall comply with
the conditions.

3.      If the Central Authority of the Requested State denies assistance, it shall
inform the Central Authority of the Requesting State of the basis for the denial.

## Article 4

### Form and Contents of Requests

1.      A request for assistance shall be in writing except that the Central Authority
of the Requested State may accept a request in another form in emergency situations. If
the request is not in writing, the request shall be confirmed in writing within ten days
thereafter unless the Central Authority of the Requested State agrees otherwise.

2.      The request shall include the following:

   (a)     the name of the authority conducting the investigation, prosecution,
           or proceeding to which the request relates;

4

    (b)    a description of the subject matter and nature of the investigation, prosecution, or proceeding, including the specific criminal offenses which relate to the matter;

    (c)    a description of the evidence, information, or other assistance sought; and

    (d)    a statement of the purpose for which the evidence, information, or other assistance is sought.

3.    To the extent necessary and possible, a request shall also include:

    (a)    information on the identity and location of any person from whom evidence is sought;

    (b)    information on the identity and location of a person to be served, that person's relationship to the proceedings, and the manner in which service is to be made;

    (c)    information on the identity and whereabouts of a person to be located;

    (d)    a precise description of the place or person to be searched and of the articles to be seized;

    (e)    a description of the manner in which any testimony or statement is to be taken and recorded;

    (f)    a list of questions to be asked of a witness;

    (g)    a description of any particular procedure to be followed in executing the request;

    (h)    information as to the allowances and expenses to which a person asked to appear in the Requesting State will be entitled; and

    (i)    any other information that may be brought to the attention of the Requested State to facilitate its execution of the request.

## Article 5

### Execution of Requests

1.    The Central Authority of the Requested State shall promptly execute the request or, when appropriate, shall transmit it to the authority having jurisdiction to do so. The competent authorities of the Requested State shall do everything in their power to execute the request. The competent judicial or other authorities of the Requested State shall have power to issue subpoenas, search warrants, or other orders necessary to execute the request.

5

2.     The Central Authority of the Requested State shall make all necessary arrangements for and meet the costs of the representation in the Requested State of the Requesting State in any proceedings arising out of a request for assistance.

3.     Requests shall be executed in accordance with the internal laws and procedures of the Requested State except to the extent that this Treaty provides otherwise. Procedures specified in the request shall be followed except to the extent that those procedures cannot lawfully be followed in the Requested State. Where neither the Treaty nor the request specifies a particular procedure, the request shall be executed in accordance with the appropriate procedure under the laws applicable for investigations or proceedings in the Requested State.

4.     If the Central Authority of the Requested State determines that execution of a request would interfere with an ongoing criminal investigation, prosecution, or proceeding in that State, it may postpone execution, or make execution subject to conditions determined to be necessary after consultations with the Central Authority of the Requesting State. If the Requesting State accepts the assistance subject to the conditions, it shall comply with the conditions.

5.     The Requested State shall use its best efforts to keep confidential a request and its contents, if such confidentiality is requested by the Central Authority of the Requesting State. If the request cannot be executed without breaching such confidentiality, the Central Authority of the Requested State shall so inform the Central Authority of the Requesting State, which shall then determine whether the request should nevertheless be executed.

6.     The Central Authority of the Requested State shall respond to reasonable inquiries by the Central Authority of the Requesting State concerning progress toward execution of the request.

7.     The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the outcome of the execution of the request. If the request is denied, the Central Authority of the Requested State shall inform the Central Authority of the Requesting State of the basis for the denial.

## Article 6

### Costs

The Requested State shall pay all costs relating to the execution of the request, except for the fees of expert witnesses, the costs of translation, interpretation, and transcription, and the allowances and expenses related to travel of persons pursuant to Articles 10 and 11, which costs, fees, allowances, and expenses shall be paid by the Requesting State.

## Article 7

### Limitations on Use

1.     The Requesting State shall not use any information or evidence obtained under this Treaty for any purposes other than for the investigation, prosecution or suppression in the territory of the Requesting State of the criminal offences stated in the request without the prior consent of the Requested State.

6

2.      The Central Authority of the Requested State may request that information or evidence furnished under this Treaty be kept confidential or be used only subject to terms and conditions it may specify.  If the Requesting State accepts the information or evidence subject to such conditions, the Requesting State shall use its best efforts to comply with the conditions.

3.      Nothing in this Article shall preclude the use or disclosure of information to the extent that there is an obligation to do so under the Constitution of the Requesting State in a criminal prosecution.  The Requesting State shall notify the Requested State in advance of any disclosure made pursuant to this paragraph.

4.      Information or evidence which has been made public in the Requesting State in accordance with paragraphs 1 or 2 may thereafter be used for any purpose.

## Article 8

### Testimony or Evidence in the Requested State

1.      Insofar as the laws of the Requested State allow, a person in the Requested State from whom testimony or evidence is requested shall be compelled, if necessary, to appear and testify or produce items, including documents, records, and articles of evidence.

2.      Upon request, the Central Authority of the Requested State shall furnish information in advance about the date and place of the taking of the testimony or evidence pursuant to this Article.

3.      The Requested State shall permit the presence of such persons as specified in the request during the execution of the request, and shall allow such persons to question the person giving the testimony or evidence.

4.      If the person referred to in paragraph 1 asserts a claim of immunity, incapacity, or privilege under the laws of the Requesting State, the testimony or evidence shall nonetheless be taken and the claim made known to the Central Authority of the Requesting State for resolution by the authorities of that State.

5.      Evidence produced in the Requested State pursuant to this Article or which is the subject of testimony taken under this Article may be authenticated by an attestation, including, in the case of business records, authentication in the manner indicated in Form A appended to this Treaty.  Documents authenticated by Form A shall be admissible in evidence in the Requesting State.

## Article 9

### Records of Government Agencies

1.      The Requested State shall provide the Requesting State with copies of publicly available records, including documents or information in any form, in the possession of government departments and agencies in the Requested State.

7

2.      The Requested State may provide copies of any records, including documents or information in any form, which are in the possession of a government department or agency in that State, but which are not publicly available, to the same extent and under the same conditions as such copies would be available to its own law enforcement or judicial authorities.  The Requested State may in its discretion deny a request pursuant to this paragraph entirely or in part.

3.      Official records produced pursuant to this Article may be authenticated by the official in charge of maintaining them through the use of Form B appended to this Treaty.  No further authentication shall be necessary.   Documents authenticated under this paragraph shall be admissible in evidence in the Requesting State.

## Article 10

### Testimony in the Requesting State

1.      When the Requesting State requests the appearance of a person in that State, the Requested State shall invite the person to appear before the appropriate authority in the Requesting State.  The Requesting State shall indicate the extent to which the expenses will be paid.  The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the response of the person.

2.      The Central Authority of the Requesting State shall inform the Central Authority of the Requested State whether a decision has been made by the competent authorities of the Requesting State that a person appearing in the Requesting State pursuant to this article shall not be subject to service of process, or be detained or subjected to any restriction of personal liberty, by reason of any acts or convictions which preceded his departure from the Requested State.

3.      The safe conduct provided for by this Article shall cease seven days after the Central Authority of the Requesting State has notified the Central Authority of the Requested State that the person's presence is no longer required, or when the person, having left the Requesting State, voluntarily returns.  The competent authorities of the Requesting State may, in their discretion, extend this period up to fifteen days if they determine that there is good cause to do so.

## Article 11

### Transfer of Persons in Custody

1.      A person in the custody of the Requested State whose presence in the Requesting State is sought for purposes of assistance under this Treaty shall be transferred from the Requested State to the Requesting State for that purpose if the person consents and if the Central Authorities of both States agree.

2.      A person in the custody of the Requesting State whose presence in the Requested State is sought for purposes of assistance under this Treaty may be transferred from the Requesting State to the Requested State for that purpose if the person consents and if the Central Authorities of both States agree.

8

3.      For purposes of this Article:

(a)      the receiving State shall have the authority and the obligation to keep the person transferred in custody unless otherwise authorized by the sending State;

(b)      the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or as otherwise agreed by both Central Authorities;

(c)      the receiving State shall not require the sending State to initiate extradition proceedings for the return of the person transferred; and

(d)      the person transferred shall receive credit for service of the sentence imposed in the sending State for time served in the custody of the receiving State.

### Article 12

### Location or Identification of Persons or Items

The Requested State shall use its best efforts to ascertain the location or identity of persons or items specified in the request.

### Article 13

### Service of Documents

1.      The Requested State shall use its best efforts to effect service of any document relating, in whole or in part, to any request for assistance made by the Requesting State under the provisions of this Treaty.

2.      The Requesting State shall transmit any request for the service of a document requiring the appearance of a person before an authority in the Requesting State a reasonable time before the scheduled appearance.

3.      The Requested State shall return a proof of service in the manner specified in the Request.

### Article 14

### Search and Seizure

1.      The Requested State shall execute a request for the search, seizure, and delivery of any item to the Requesting State if the request includes the information justifying such action under the laws of the Requested State.

9

2.      Upon request, every official who has custody of a seized item shall certify, through the use of Form C appended to this Treaty, the continuity of custody, the identity of the item, and the integrity of its condition. No further certification shall be required. The certificate shall be admissible in evidence in the Requesting State.

3.      The Central Authority of the Requested State may require that the Requesting State agree to the terms and conditions deemed to be necessary to protect third party interests in the item to be transferred.

### Article 15

### Return of Items

The Central Authority of the Requested State may require that the Central Authority of the Requesting State return any  items, including documents, records or articles of evidence furnished to it in execution of a request under this Treaty as soon as possible.

### Article 16

### Assistance in Forfeiture Proceedings

1.      If the Central Authority of one Contracting Party becomes aware that proceeds or instrumentalities of offenses that may be forfeitable or otherwise subject to seizure are located in the other Contracting Party, it may so inform the Central Authority of that other Party.  If the Party receiving such information has jurisdiction in this regard, it may present this information to its authorities for a determination whether any action is appropriate.  These authorities shall issue their decision in accordance with the laws of their country.  The Central Authority of the Party that received the information shall inform the Central  Authority of the Party that provided the information of the action taken.

2 .      The Contracting Parties shall assist each other to the extent permitted by their respective laws in proceedings relating  to the forfeiture of the proceeds and instrumentalities of offenses, restitution to the victims of crime, and the collection of fines imposed as sentences in criminal prosecutions.  This may include action to temporarily immobilize the proceeds or instrumentalities pending further proceedings.

3.      The Party that has custody over proceeds or instrumentalities of offenses shall dispose of them in accordance with its laws.  Either Party may transfer to the other Party all or part of such assets, or the proceeds of their sale, to the extent not prohibited by the transferring Party's laws and upon such terms as it deems appropriate.

### Article 17

### Compatibility with Other Arrangements

Assistance and procedures set forth in this Treaty shall not prevent either Contracting Party from granting assistance to the other Party through the provisions of

10

other applicable international agreements, or through the provisions of its national laws. The Parties may also provide assistance pursuant to any bilateral arrangement, agreement, or practice which may be applicable.

### Article 18

### Consultation

The Central Authorities of the Contracting Parties shall consult, at times mutually agreed to by them, to promote the most effective use of this Treaty. The Central Authorities may also agree on such practical measures, including training and technical assistance, as may be necessary to facilitate the implementation of this Treaty.

### Article 19

### Ratification, Entry Into Force, and Termination

1.      This Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged at Washington as soon as possible.

2.      This Treaty shall enter into force upon the exchange of instruments of ratification.

3.      This Treaty shall apply to any request presented after the date of its entry into force whether the relevant acts or omissions occurred prior to or after that date.

4.      Either Party may terminate this Treaty by means of written notice to the other Party. Termination shall take effect six months following the date of receipt of the notification.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Treaty.

DONE at  Belize    , in duplicate, this  19th day of September   , 2000.


FOR THE GOVERNMENT OF THE                 FOR THE GOVERNMENT OF
UNITED STATES OF AMERICA:                 BELIZE:

11

**Form A**

**CERTIFICATE OF AUTHENTICITY OF**
**BUSINESS RECORDS**

I, _____(name), attest on penalty of criminal punishment for false statement or attestation that I am employed by _____(name of business from which documents are sought)_____ and that my official title is _____(official title)_____. I further state that each of the records attached hereto is the original or a duplicate of the original record in the custody of _____ _____(name of business from which documents are sought)_____.

I further state that:

      (A)    such records were made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

      (B)    such records were kept in the course of a regularly conducted business activity;

      (C)    the business activity made such records as a regular practice; and

      (D)    if any such record is not the original, it is a duplicate of the original.


_____(signature)_____      _____(date)_____

Sworn to or affirmed before me, _____(name)_____, a judicial officer, this _____ day of _____, 19___.

12

**Form B**

**ATTESTATION OF AUTHENTICITY OF
FOREIGN PUBLIC DOCUMENTS**

I, _____[name]_____ , attest on penalty of criminal punishment for false statement or attestation that my position with the Government of _____[country]_____ is _____[official title]_____ and that in that position I am authorized by the law of _____[country]_____ to attest that the documents attached and described below are true and accurate copies of original official records which are recorded or filed in _____[name of office or agency]_____ , which is a government office or agency of _____[country]_____ .

**Description of Documents:**

_____[signature]_____

_____[title]_____

_____[date]_____

13

**Form C**

**ATTESTATION WITH RESPECT
TO SEIZED ARTICLES**

I, _____*[name]*_____, attest on penalty of criminal punishment for false statement or attestation that my position with the Government of _____*[country]*_____ is _____*[official title]*_____.  I received custody of the articles listed below from _____*[name of person]*_____ _____ on _____*[date]*_____, at _____*[place]*_____ in the same condition as when I received them (or, if different, as noted below).

**Description of Articles:**

**Changes in condition while in my custody:**

_____
*[signature]*

_____
*[title]*

*Official Seal*

_____
*[place]*

_____
*[date]*

EMBASSY OF THE
UNITED STATES OF AMERICA

No. 032

Excellency:

I have the honor to refer to the Treaty on Mutual Legal Assistance in
Criminal Matters between the Government of the United states of America and
the Government of Belize ("the treaty") and to express the understanding of the
United States regarding the application of the treaty to criminal tax matters.

Article I(1) of the Treaty provides that assistance may be granted in
connection with "the investigation, prosecution, and prevention of criminal
offenses, and in proceedings related to criminal matters."

During the negotiations, the United States delegation was asked whether
these provisions could be interpreted to exclude assistance under the treaty for
civil and administrative income tax matters that are unrelated to any criminal
matter.  The United States delegation agreed that the provision could be so
interpreted, and confirmed that the United States does not intend to seek
assistance under the treaty in the routine civil and administrative enforcement of
our income tax laws, including the regulation, imposition, calculation and
collection of such income taxes.

I have been advised by the Tax Division of the United States Department
of Justice that criminal tax cases in the United States always involve a voluntary
and intentional violation of a known legal duty.  Under United States law, this
standard entails willful conduct and would not be met where a defendant has
acted negligently or carelessly.  Moreover, to establish the required level of willful
conduct under United States law, the Government prosecutor must show that the

defendant took affirmative action, the likely effect of which was to mislead or conceal.  Examples of such willful activity include keeping a double set of books, making false entries or alterations to financial records, or concealing assets or covering up sources of income.

Further, although the treaty has no general dual criminality requirement, my Government understands United States and Belizean law to be consistent with respect to criminalizing willful, fraudulent misconduct by private persons in representations to the Government.  As a result, the conduct underlying a United States Government request to Belize for assistance in a criminal tax evasion case would in all likelihood also be criminalized under the law in Belize.

Finally, Article 9 of the treaty has additional provisions that are relevant when a Party requests Government records in a criminal taxation matter.  The law and policy of both the United States and Belize recognize the need in many cases to restrict access to information collected by revenue authorities.  Article 9(2) embodies this approach by providing that the Requested State may provide the Requesting State with non-public records.  The Requested State retains "discretion (to) deny a request pursuant to this paragraph entirely or in part."

I would appreciate your Excellency confirming that the understanding described above is also the understanding of the Government of Belize.

Accept, Excellency, the assurances of my highest consideration.


Embassy of the United States of America
Belize City, September 18, 2000.



# MINISTRY OF FOREIGN AFFAIRS

P.O. Box 174
New Administrative Building
Belmopan, BELIZE, C.A.
Tel: (501) 8-22322 / 22167
Fax: (501) 8-22854  E-mail: belizemfa@belize.gov.bz

Our Reference:   FA/BR/17/6/00(47)

Note No.  498

The Ministry of Foreign Affairs presents its compliments to the Embassy of the United States of America in Belize and has the honour to acknowledge receipt of Note No. 032 of 18 September, 2000, which reads as follows:

"I have the honor to refer to the Treaty on Mutual Legal Assistance in Criminal Matters between the Government of the United states of America and the Government of Belize ("the treaty") and to express the understanding of the United States regarding the application of the treaty to criminal tax matters.

Article l(1) of the Treaty provides that assistance may be granted in connection with "the investigation, prosecution, and prevention of criminal offenses, and in proceedings related to criminal matters."

During the negotiations, the United States delegation was asked whether these provisions could be interpreted to exclude assistance under the treaty for civil and administrative income tax matters that are unrelated to any criminal matter.  The United States delegation agreed that the provision could be so interpreted, and confirmed that the United States does not intend to seek assistance under the treaty in the routine civil and administrative enforcement of our income tax laws, including the regulation, imposition, calculation and collection of such income taxes.

I have been advised by the Tax Division of the United States Department of Justice that criminal tax cases in the United States always involve a voluntary and intentional violation of a known legal duty.  Under United States law, this standard entails willful conduct and would not be met where a defendant has acted negligently or carelessly.  Moreover, to establish the required level of willful conduct under United States law, the Government prosecutor must show that the defendant took affirmative action, the likely effect of which was to mislead or conceal.  Examples of such willful activity include keeping a double set of books, making false entries or alterations to financial records, or concealing assets or covering up sources of income.

Further, although the treaty has no general dual criminality requirement, my Government understands United States and Belizean law to be consistent with respect to criminalizing willful, fraudulent misconduct by private persons in representations to the Government. As a result, the conduct underlying a United States Government request to Belize for assistance in a criminal tax evasion case would in all likelihood also be criminalized under the law in Belize.

Finally, Article 9 of the treaty has additional provisions that are relevant when a Party requests Government records in a criminal taxation matter. The law and policy of both the United States and Belize recognize the need in many cases to restrict access to information collected by revenue authorities. Article 9 embodies this approach by providing that the Requested State may provide the Requesting State with non-public records. The Requested State retains 'discretion (to) deny a request pursuant to this paragraph entirely or in part.'

I would appreciate your Excellency confirming that the understanding described above is also the understanding of the Government of Belize.

Accept, Excellency, the assurances of my highest consideration."

The Ministry of Foreign Affairs of Belize has the honour to confirm that the understanding described above is also the understanding of the Government of Belize.

The Ministry of Foreign Affairs of Belize avails itself of this opportunity to renew to the Embassy of the United States of America in Belize the assurances of its highest consideration.

**EMBASSY OF THE UNITED STATES OF AMERICA**
**BELIZE CITY**

**22 SEPTEMBER, 2000**