

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WMP:JMK/MK
F. #2013R00505

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 2, 2015

By ECF and Email

James Kousouros, Esq.
260 Madison Avenue, 22nd Floor
New York, New York 10016

Re:   United States v. Gregg Mulholland
      Criminal Docket No. 14-476 (S-1) (ILG)

Dear Mr. Kousouros:

The government writes in response to your letter dated November 23, 2015 ("Def. Ltr.") concerning six discovery issues, as set forth below.

### MLAT Request

You seek the production of the Mutual Legal Assistance Treaty ("MLAT") request to Belize and all communications between the government and Belize regarding that request, and characterize that production as "necessary for the government to meet its Rule 16 obligations." (Def. Ltr. at 1-3). The defendant is not entitled to the MLAT materials, has no standing to make such a challenge, and the government's communications with the Belizean authorities do not fall within the purview of Rule 16 discovery. See United States v. Rommy, 506 F.3d 108, 129-30 (2d Cir. 2007); United States v. Kassar, 582 F. Supp. 2d 488, 493 n. 3 (S.D.N.Y. 2008). The government has complied, and will continue to comply, with its Rule 16 obligations, including those set forth in Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

As previously stated in an email to you dated November 23, 2015, the government sent an MLAT request to Belize on September 9, 2015, the day of co-defendant Robert Bandfield's arrest. In that submission to Belize authorities, the government requested the search of IPC, Titan, Legacy and Unicorn's offices in Belize City, Belize. Later that day, without any consultation with U.S. authorities, Belizean law enforcement authorities searched those offices. U.S. law enforcement officials were not present at the searches and did not participate in the searches in any way. Following the searches, the Belizean authorities contacted U.S. officials and made the evidence obtained from the searches available in Belize to U.S. law enforcement members for review and copying.

The government renews its request for the hardware detailed in your letter so that it can produce the evidence obtained from the aforementioned searches to you.

## Bill of Particulars

You state that you anticipate filing a motion for a Bill of Particulars based on the complex nature of the allegations and the voluminous amount of discovery. (Def. Ltr. at 3-4). Specifically, you request that the government identify the evidence upon which it relies regarding certain allegations in the superseding indictment, including the government's estimates of the amount of money laundered as part of the charged scheme and the defendant's proceeds from his fraudulent manipulation of more than forty U.S. publicly traded companies. (Id.).

A bill of particulars is not appropriate unless the indictment is too vague to inform the defendant of the nature of the charges to allow the preparation of a defense, or if necessary to avoid unfair surprise or allay double jeopardy concerns. See United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991). In fact, a bill of particulars is only required when the charges in the indictment are so general that they fail to apprise the defendant of the specific acts of which he is accused. See United States v. Torres, 901 F.2d 205, 234; see also United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Salazar, 485 F.2d 1272, 1277 (2d Cir. 1973) (finding sufficient "indictments which track the language of a statute and, in addition, do little more than state time and place in approximate terms").

Here, the government provided ample information about the nature of the charges in a 32-page speaking indictment. Additionally, the government has provided information in discovery about the bank accounts and law firms used to launder the approximately $500 million in fraudulent proceeds. A Bill of Particulars is not meant to be a substitute for defense counsel's review of discovery to locate relevant bank records. Nevertheless, the government is amenable to directing you to relevant bank records evidence in the discovery produced thus far that supports these allegations. The government will also provide you with a list of ticker symbols fraudulently manipulated by the defendant and his co-conspirators, as currently known to the government, and the identities of the Corrupt Clients referenced in the superseding indictment.

## Expert Reports and Disclosures

You request that the government provide the names of its experts and the basis for their opinions, and speculate as to the kind of expert the government will call at trial and the current status of that expert's work. (Def. Ltr. at 4). As you acknowledge, the government has indicated that it will comply with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure and Rules 702, 703 and 705 of the Federal Rules of Evidence, and notify you in a timely fashion of any expert that the government intends to call at trial and provide you with a summary of the expert's opinion. The identity, qualifications and bases for the conclusions of each expert will be provided to you when they become available. It bears noting, however, that the government disagrees with your characterization that an FBI agent who testifies as a "summary witness" for voluminous bank records should be designated as an expert.

2

### Password Protected Discovery

The government provided the password to its November 3, 2015 discovery production to you in an e-mail on the same day of the production. The government provided that password again to you on November 24, 2015. Yesterday, you notified the government that you were unable to access the discovery production using that password. As stated earlier today, the government will provide you with a new set of discovery using an alternate form of encryption as soon as possible.

### Attorney Client Privilege

As set forth in its August 20, 2015 discovery letter, the government instituted firewall procedures to segregate materials it had obtained that may be protected by the attorney-client privilege, and withheld those materials from the prosecution team. The firewall team's review of the materials at issue occurred, in large part, prior to the defendant's arrest. Consequently, the prosecutors assigned to review the materials did not consult with the defendant prior to their review. The intercepted calls that were marked as potentially privileged were flagged as part of standard wiretap minimization procedures.

To the extent that you believe that any applicable privilege exists, please provide us with information about the privilege and the basis and scope for such privilege. If we receive that information, we can provide you with additional detail that could alleviate your concerns.

### Defendant's Statements

The government will provide you with a list of email addresses believed to be used by the defendant that are currently known to the government. Please note, however, that this is not intended to be a complete list and the government reserves the right to supplement the list,

Please contact me directly if you have any additional questions or concerns.

Very truly yours,

ROBERT L. CAPERS
United States Attorney

By: /s/
Jacquelyn M. Kasulis
Winston M. Paes
Michael T. Keilty
Assistant U.S. Attorneys
(718) 254-6103 (Kasulis)
(718) 254-6023 (Paes)
(718) 254-7528 (Keilty)